AARON PRICE et al. v. ALFRED E. MARTIN et al.

1. BONA FIDE PURCHASER WITHOUT NOTICE. — A purchaser without notice from one with notice will be protected in his title in equity, on account of his own *bona fides;* and a purchaser with notice from one without notice will be protected in his title, on account of the *bona fides* of his vendor.

2. SAME — THIS DOCTRINE APPLICABLE TO EVERY SORT OF EQUITY, — It is wholly immaterial of what nature the equity is; whether it is a lien, or an incumbrance of some other kind, or a trust, or any other claim; a *bona fide* purchaser of an estate for a valuable consideration purges away the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party, whose conscience stands bound by the violation of his trust, and meditated fraud. If the estate becomes revested in him, the original equity will re-attach to it in his hands.

3. INADEQUACY OF PRICE. — Mere inadequacy of price is no ground to set aside a conveyance; but there may be inadequacy so great as to demonstrate some gross imposition or undue influence, and, in such cases, courts of equity should interfere on satisfactory grounds. To warrant such interference alone on the ground of inadequacy of price, it should be such as to shock the conscience, and amount, in itself, to conclusive evidence of fraud.

4. SAME — BETWEEN STRANGERS. —Where no fiduciary relation exists between the parties dealing for the sale and purchase of an estate, mere inadequacy of consideration is not sufficient to induce a court of equity to set it aside.

5. CASE IN JUDGMENT. — In this case the admission in the bill of complaint, that the vendor under whom defendants claim title was a *bona fide* purchaser of the land, completely destroys the equity of the bill, for her vendors, however fraudulent may have been their motives, are protected in their purchase by her *bona fides*, and, although the property sold, perhaps, for less than its value, the inadequacy was not so gross as, of itself, to prove fraud.

ERROR to the chancery court of Rankin county. CABANISS, Chancellor.

The opinion of the court contains a minute statement of the facts of the case as shown by the pleadings, and recites "all the evidence having any bearing upon the case."

*Johnston & Johnston* and *Cooper & Cole,* for plaintiffs in error.

1. It is certainly not a little curious to find, as a reason urged for vacating a deed of trust, that the consideration was "inadequate," in other words, that the debt secured was not a sufficient incumbrance to sustain the deed. We would rather think that the general creditors would be

injured in proportion to the extent of the incumbrance, and cannot well be permitted to complain that the land was not sufficiently incumbered.

2. No deed or conveyance of this kind can ever be set aside on a general allegation that it is "fraudulent in law" as to creditor's rights. The legal objections by which it can be avoided must be pointed out. It appears conclusively from the pleading, that the debt secured was a *bona fide* one, and that the debt was incurred by an advance of money made by Mrs. Withers at the date of the deed. It nowhere appears that Stein had any intention of defrauding complainants, or that Mrs. Withers knew that Stein was at all indebted. This transaction then, in point of fact and actual intention, was *bona fide* in every particular. Upon what theory can it, in any sense, be void or fraudulent in law? It is not even alleged that Stein at the time was insolvent. Stein had the right, acting in good faith, to secure Mrs. Withers in her advance made to him, and this without reference to his solvency, provided only, that it was without a fraudulent intent. The proposition cannot be questioned, that Mrs. Withers, not even knowing that Stein was in any way indebted, had a perfect right to take the security for her debt.

3. The deed of trust was made March 17, 1866, and recorded February 27, 1867. Batt, one of the complainants, obtained his judgment on the 5th February, 1868, and Martin's judgment was rendered on the 8th March, 1867. Col. Withers, the husband of Mrs. Withers, explains why the deed was not recorded sooner. The matter was overlooked until about February, 1867, when, hearing that Stein was sued, he sent the deed to Rankin county for record, in order to preserve the lien on the land. An explanation certainly perfectly natural and satisfactory. Complainants seemed to have forgotten that at this time they were both moving energetically for prior judgment liens.

4. The sale to Mrs. Withers, under the deed in trust, cannot be set aside for inadequacy of price. The doctrine is

well settled that a sale under a decree will not be set aside for inadequacy of price. Mitchell v. Harris et al., 43 Miss. 314. This sale under the deed by the trustees empowered to sell certainly will be regarded as favorably as a sale under a decree by a commissioner. As to the objection urged that the land was sold in one body, we reply, that there is nothing in the deed, nor is there any rule of law, requiring lands in sales under deeds of trust to be sold in small parcels. It is the duty of the trustee to sell the property conveyed to the best advantage for all parties interested, and to sell in the manner best calculated to bring the largest sum. In this case where there was a fair, regular and open sale it will be presumed that the trustees sold the property to the best advantage.

5. The allegation that Withers purchased, with the understanding or agreement that Stein was to redeem, is flatly denied by Mrs. Withers and by Col. Withers in their joint answer, and is distinctly denied by both Little and Price. It is not supported by one word of evidence.

6. The answers of Mrs. and Col. Withers, and Little and Price also distinctly deny the allegation that the sale under the deed in trust was procured by Little and Price to defeat the claims of complainants. No evidence is introduced to support this assertion.

7. Little and Price, in direct denial of and allegation of the bill, state that they purchased from Mrs. Withers with their own money, and that none of the money belonged to Stein's estate ; and they further deny that the purchase was made in pursuance of a contract between Mrs. Withers and Stein that the latter was to re-purchase or redeem. They state also, in denial of this part of the bill, that the purchase was their own, and made with their own means.

*Mayers & Lowry*, for defendants in error.

If the transaction of respondents was fair and in good faith, this is certainly a most extraordinary case in all its aspects. Stein owned 1,800 acres of land, on which he

resided.  He had a family.  He was involved in debt, and owned but little personal property.  He went to Jackson in March, 1866, and anticipated his crop for that year, and sold to Mrs. Withers 833 pounds of lint cotton, to be delivered on the 1st November, 1866, for which she advanced not exceeding $200, because the estimated value of the cotton at the time of delivery was only $230, and she only bid that sum for the land in April, 1867, and the fee for writing the deed, stamping, etc., and interest would cover the $30, and to secure the delivery of the cotton, Stein conveyed all his land, not reserving his homestead exemption, which, under the law at that time, was 240 acres, when the balance of the land, 1,560 acres, without the homestead, would have been ample to secure the debt to Mrs. Withers.  No sane man will incumber his homestead when he can easily avoid it, and no creditor will exact such incumbrance if there is ample security for his debt without it.  Here were 1,560 acres of land worth, as Price and Little admit, the average sum of $1 25 per acre, equal to $1,950, which any creditor would have been willing to accept as security for the loan of $200, and no debtor would have been willing to add thereto his exemption of 240 acres, unless he had some ulterior object in view.  It is but reasonable, then, to assume that Stein designed to cover up his land and let it be sold, and, at some future time, to redeem it from Withers through himself or friends, knowing, as he did, that Withers "was always willing for Stein or his family to re-purchase it on payment of his debt, costs and expenses," and therefore the object of Stein was to hinder, delay or defraud his creditors.  That Stein acted upon the belief that he had a clear right "to redeem his land," not to re-purchase it, is proved by the testimony of John B. Lewis, who stated that Stein came to him to borrow money "to redeem his land." Stein certainly would not have presumed so to do without some assurance from Withers that he could do so.  The tenacity with which debtors cling to "what the law allows a man" is proverbial.  They always know the exact

amount of exemptions, and are careful to shape their acquisitions within the legal standard. They rarely incumber their homesteads on any account, and, if they do, it is to serve a purpose beyond the transaction. But it may be said that Stein intended to pay the debt promptly, and hence did not care how much he conveyed to secure it. This position is not tenable, because every sane man knows that he must necessarily injure his credit to the exact extent that he incumbers his property, and the very fact that Stein had conveyed all his lands to secure Withers would most seriously damage his credit. Here Stein conveyed land worth at least, by the admission of Price and Little, $2,250 to repay about $200 and interest, ten times the amount advanced !

The conveyance was made on the 17th March, 1866, and kept from the record in Rankin until the 27th July, 1867, when, as Withers states, he was informed that Stein had been sued, and he sent over the deed for record to save his priority of lien. At that date ; indeed, prior to the conveyance from Stein to Bell and Green, Martin had brought suit against Stein. The circuit court in which Martin's suit was then pending was held on the fourth Monday in February. Who informed Withers of Martin's suit and that it was about to ripen into judgment, we are not informed. It was certainly a loose way for a business man who was buying, for his wife, cotton from and advancing money to a citizen of another county, and that citizen involved in debt, to lay away his deed of trust and not have it recorded until long after his debt matured, and nearly a year after its execution. The considerations are grossly inadequate as charged by the bill, and not denied by the answer, and that fact affords strong evidence itself, and, when taken with other facts and circumstances disclosed, the evidence is conclusive that Stein intended to hinder, delay or defraud his creditors, and hence the deed to Bell and Green was void.

Price and Little insist that they are entitled to protection, because they bought before Martin and Batte's judgment

liens were created, and thereby they admit if the judgment liens are prior to their purchase they are not to be protected. As above stated, the record shows they bought long after the judgment liens attached. Martin's purchase at execution sale was in August, 1868, under his judgment lien, and Price and Little's purchase was on 1st December, 1868. In no aspect of the case are Price and Little entitled to the favorable consideration of a court of equity. They agreed, they stipulated with Withers, that Stein's children should have the profits of the trade. They did make large profits, as admitted by them, but we have no evidence that Stein's children have ever received any thing. Indeed, the presumption is they have not, because if they had Price and Little would have been glad to have stated it. They have, therefore, to say the least, "defeated the benevolent intentions of Mrs. Withers," if they have not also defeated Martin and Batte in collecting their just debts. The children were destitute. They were, too, the nephews and neices of Price, yet we have no evidence they carried out "the benevolent intentions of Mrs. Withers."

Withers and wife cannot in any event be injured. They lent Stein, say $200. Stein paid $60. Price and Little paid them $425, making $485 in cash, and took their deed of special warranty. Price and Little will not lose if they have to pay Martin and Batte's debts, and costs and interest; because they have already realized sufficient profits to do so, and have not carried out "the benevolent intentions of Mrs. Withers." Beside, Stein owned $2,250 worth of land, which he sold for $200, one-tenth its value! Price and Little sold less than one-fourth of the lands for three times as much as they paid for them! and say they are innocent purchasers and should be protected! If Stein designed to hinder, delay or defraud his creditors, and Withers and wife, and the trustees, were ignorant of that design, still the conveyance to Bell and Green was void as to these existing creditors. That Stein reserved a benefit to himself or family in the transactions with Withers is abundantly established

by the testimony. That the deed was void on its face, we think is shown by the quantity of lands conveyed to secure only 833 pounds of cotton, a commodity greatly fluctuating in value, and in no event could have risen to be equal in value to one-fifth of the lands. That Martin and Batte were entitled to relief it seems undeniable. The decree may be in some of its details erroneous, but in the main we think it correct and equitable. If not, we insist that this court correct the decree and enter such as is warranted by the evidence in the record.

We refer to the following authorities as to fraudulent conveyances, etc.: Bogard v. Gardley, 4 Smedes & Marsh. 302; Petrie v. Wright, 6 ib. 647; Bowers v. Johnson, 10 ib. 169; Stovall v. Farmers' Bank, 8 ib. 305; Taylor v. Eckford, 11 ib. 21; Farmers' Bank v. Douglass, 11 ib. 469; Foster v. Pugh, 12 ib. 416; McCluhy v. Gordon, 26 Miss. 260; Parkhurst v. McGraw, 24 ib. 134; Lawrence v. Hand, 23 ib. 103; Johnson v. Dirk, 27 ib. 277; Stanton v. Green, 34 ib. 577; Hunt v. Knox, 34 ib. 655.

*W. B. Shelby,* on the same side,

Filed an elaborate written argument on the facts and the law of the case, too long for insertion, and which the reporter cannot abridge without doing injustice to its author. It is therefore omitted.

PEYTON, C. J.:

On the 17th of March, 1866, William Stein conveyed a certain tract of land, situate in Rankin county, containing about 1,800 acres, to Joseph Bell and Thomas Green, in trust to secure the performance of an obligation to deliver to Martha S. Withers 833 pounds of cotton at Jackson, on the 1st day of November, 1866, or, in case of failure, the payment of the value thereof at the market price. This deed of trust was properly acknowledged and recorded on the 27th day of February, 1867.

On the 10th of April, 1867, the said trustees, Bell and Green, sold said land at public auction, under said deed of

trust, to Martha S. Withers for the sum of $230, and executed to her a deed for the same. The said Martha S. Withers, in conjunction with her husband, on the 21st day of December, 1868, sold and conveyed the said land to Absalom Little and Aaron Price for the sum of $425, by deed of that date, which was duly acknowledged and filed for record on the 5th of January, 1869, and recorded on the 25th day of that month.

On the 12th day of February, 1869, Alfred Martin and William H. Batte filed their bill, in the chancery court of said county of Rankin, against Little and Price, Withers and wife and Bell and Green, to set aside the conveyance from Withers and wife to said Little and Price as fraudulent and void as to the creditors of the said William Stein. The bill alleges that complainants were creditors of said Stein at the time of his execution of the deed of trust to Bell and Green; and that the said Alfred Martin, on the 8th of March, 1867, obtained a judgment on his claim, in the circuit court of said county, against said Stein for the sum of $414 61; and that the said W. H. Batte obtained a judgment on his claim against said Stein, in the same court, on the 5th day of February, 1868, for the sum of $144 96; and charges that the conveyance to the defendants, Little and Price, was made to hinder, delay and defraud the complainants in the collection of their judgments against the said William Stein; and prays that the conveyance to these defendants may be declared fraudulent and void as to the complainants, and that the said land may be decreed to be sold for the payment of their judgments.

The defendants in their answers to the bill positively deny that the conveyance was made to defraud the creditors of the said Stein, and insist that the transaction was fair and honest, and that said conveyance was made in good faith and for a valuable consideration. The complainants then filed an amended and supplemental bill, alleging therein that said Little and Price had sold or contracted to sell part of said land to two persons therein named, who are made

parties to these proceedings and required to discover what sums of money they gave or are to give for the lands purchased by them, and to account for the same to the complainants. Upon a final hearing of the cause, the court declared that the defendants, Little and Price, hold the lands conveyed to them by Withers and wife, subject to the judgments of complainants, Martin and Batte, and decreed that said Little and Price pay to complainants, within ten days, the sums found due the complainants, and, in default thereof, that the said lands be sold by the sheriff for the payment of the same. From this decree the defendants, Price and Little, bring the case to this court and assign for error, that the court below erred in rendering a final decree for complainants, contrary to the evidence and the principles of equity applicable to the case. The equity of the bill is fully denied by direct and positive answers, and, unless there be evidence sufficient to overcome the answers, the decree cannot be sustained. We will advert to the testimony adduced on the trial of the cause.

E. Bloom testified that he had knowledge of the land and was of opinion that some of it was not worth the taxes on it, and that he would not fence it for it, and that he would not pay the taxes for it, that Aaron Price was the brother-in-law of William Stein, who died insolvent, leaving a large family of children in a destitute condition. Witness expressed to Price sympathy for the children and hoped that he would aid them, and that Price said he would do what was right and would give them each eighty acres of land, including the dwelling.

John B. Lewis testified that the land was worth about $1,500, and William Stein rented the land from Withers, and continued as such tenant in possession of the same until his death.

H. S. Cole stated in his testimony that Price said to him, when he came to witness' office to have the deed from Withers and wife to him and Little recorded, that he would assist or benefit Stein's children.

This is all the evidence having any bearing upon the case. And if Price has failed, of which we have no knowledge, to carry out his benevolent intentions toward the children of William Stein, it does not prove that the conveyance of the land by Withers and wife to Price and Little was fraudulent and void as to the creditors of Stein.

The testimony wholly fails to support the allegations of the bill, and to make out a case of fraud on the part of the plaintiffs in error in their purchase from Withers and wife against the defendants in error as creditors of Stein.

It is insisted by counsel for the defendants in error, that the fact that Price was a brother-in-law of Stein, and that he had promised to give the children of Stein some of the land, together with the inadequacy of the price paid for it, goes to establish fraud in this transaction as against the creditors of Stein. It would certainly be very unreasonable to construe the fact of Price's relationship to Stein, and the expression of his benevolent intentions toward his nephews and nieces, as evidence of fraud in a transaction perfectly fair and honest in itself.

It is admitted in the bill of complaint that Martha S. Withers was a *bona fide* purchaser of the land, under a deed of trust which stands unimpeached, and this admission completely destroys the equity of the bill. The purchasers from her, however fraudulent may have been their motives, are protected in their purchase by the *bona fides* of Mrs. Withers. For it is well settled that a purchaser, with notice from a purchaser without notice, will be protected in his title on account of the *bona fides* of his vendor, and this is so, not from the merits of the second purchaser, but of the first; for, if an innocent purchaser were prevented from disposing of the subject of his purchase, the necessary result would be a stagnation of property.

Even if William Stein made the deed of trust for the purpose of defrauding his creditors, of which, however, there is no evidence in this case, this would not affect the title of Mrs. Withers, unless she had notice of such inten-

tion of Stein, and colluded with him for that purpose. And although Price and Little may have had notice of the fraudulent intent of Stein in making the deed of trust, they will be protected in their purchase from Mrs. Withers by her purchase under the deed of trust, *bona fide* and for valuable consideration, without notice of any fraudulent intent on the part of Stein.

The doctrine in regard to the effect of notice is strictly applicable to every purchaser, whose title comes into his hands affected with notice.   But it in no manner affects any such title, derived from another person, in whose hands it stood free from any such taint.   Thus, a purchaser with notice may protect himself by purchasing the title of another *bona fide* purchaser, for a valuable consideration without notice ; for, otherwise, such *bona fide* purchaser would not enjoy the full benefit of his own unexceptionable title.   Indeed, he would be deprived of the marketable value of such a title, since it would be necessary to have public notoriety given to the existence of a prior incumbrance, and no buyer could be found, or none except at a depreciation equal to the value of the incumbrance.   For a similar reason, if a person who has notice sells to another who has no notice, and is a *bona fide* purchaser for valuable consideration, the latter may protect his title, although it was affected with the equity arising from notice, in the hands of the person from whom he derived it ; for, otherwise, no man would be safe in any purchase, but would be liable to have his own title defeated by secret equities, of which he could have no possible means of making a discovery.   In short, a purchaser without notice from one with notice will be protected in his title in equity on account of his own *bona fides*, and a purchaser with notice from one without notice will be protected in his title on account of the *bona fides* of his vendor. This doctrine, in both of its branches, has been settled for nearly a century and a half in England, and has been adopted and adhered to in this country as an indispensable muniment of title.   And it is wholly immaterial of what

nature the equity is, whether it is a lien, or an incumbrance, or a trust, or any other claim ; for a *bona fide* purchase of an estate, for a valuable consideration, purges away the equity from the estate, in the hands of all persons who may derive title under it, with the exception of the original party whose conscience stands bound by the violation of his trust and meditated fraud.    But, if the estate become re-vested in him, the original equity will re-attach to it in his hands. Lewin on Trusts and Trustees, 725, 726 ; 1 Story's Eq. Jur. 401, §§ 409, 410.

Mere inadequacy of price is no ground to set aside a conveyance.    Still, however, there may be such an unconscionableness or inadequacy in a bargain, as to demonstrate some gross imposition or some undue influence ; and in such cases courts of equity ought to interfere upon satisfactory grounds.    But then such unconscionableness or such inadequacy should be made out, as would shock the conscience, and amount, in itself, to conclusive and decisive evidence of fraud.    Where no fiduciary relation exists between the parties, dealing for the sale and purchase of an estate, mere inadequacy of consideration is not sufficient to impeach the contract, so as to induce a court of equity to set it aside. The value of a thing is what it will produce, and it admits of no precise standard.    It must be in its nature fluctuating, and depends upon a variety of circumstances.    One man, in the disposal of his property, may sell it for less than an another would.    If courts of equity were to unravel all these transactions, they would throw every thing into confusion and set afloat the contracts of mankind.

In the case under consideration, the property perhaps sold for less than its real value, yet the inadequacy of price was not so gross as of itself to prove fraud or imposition upon Martha S. Withers, the vendor of the property, and even if it were, the defendants in error could not possibly, in any way, be affected by it, and therefore would have no right to complain.    In no aspect of this case can the decree of the court below be maintained.

For the reasons above stated the decree is reversed. And this court proceeding to render such a decree as the court below ought to have rendered, doth order, adjudge and decree that the bill of complaint of the defendants in error be and the same is hereby dismissed at their costs in both courts.